The final matter, No. 24-1527, Alexandra E. Molino v. Boston Medical Center. At this time, would Counsel for the Appellant please come to the podium and introduce himself on the record to begin? Good morning, Your Honors. Peter Vickery for Appellant Alexandra Molino. Thank you. Do you mind just raising your microphone a little higher? Thank you. Thank you. And I will be brief, Your Honors. Defendants have the burden of proving the affirmative defense of undue hardship in this case, and that defense rests entirely on the contention that the vaccines work to prevent contracting and spreading COVID-19. Actually, the question under Gruff v. DeJoy is whether the burden of having given her an individual religious exemption is substantial in the overall context of the employer's business. And the court must consider all relevant factors, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost to the employer. Okay. So what was the accommodation requested? To not be vaccinated, Your Honor. Okay. To continue to work at the hospital in the cardiac intensive care unit without being vaccinated. That's right, Your Honor. Okay. All right. So you, let's just put aside the religious belief and let's just assume there was a religious belief and just address undue hardship. Even in your complaint, you set forth statistics that show that the vaccines were at least partially effective at both avoiding infection with the disease and partially effective in avoiding transmission and further deaths. Your own complaint has that information. So as I understood this, you moved to strike the hospital's declaration with CDC data in it as containing impermissible hearsay. And the district court said, well, one, it's not hearsay because these are the CDC recommendations. And two, in any event, I could take judicial notice of it. Okay. So if the district court was correct about all of that, what is left of your case? Well, Your Honor, a couple of things. One is that what I believe the complaint alleges is not that the vaccines were somewhat effective. I believe that what the complaint alleges is that, among other things, the vaccines had an absolute efficacy of 0.84 percent. Yeah, but it's also inconsistent with the other allegations that they were, in fact, partially effective. Okay. And the hospital says, so we relied on CDC guidance, which says it may not be absolutely effective, but they are at least partially effective. Okay. So if they are at least partially effective, does your lawsuit come down to a contention that unless they were absolutely effective, this defense doesn't work? No, Your Honor. I think what it comes down to is this, granting arguendo that the products are somewhat effective for some period of time in preventing somebody from catching and, therefore, spreading COVID-19. What's the duration of that efficacy? But she didn't say hers was an absolute demand. I just want to come back to work. There was no durational request to the accommodation. Correct, Your Honor. She didn't say, I want to be allowed to come. If I could back my way into an answer to that question, Your Honor. It is that, let's say for the sake of argument that the products are somewhat effective, say three months, 12 weeks, and after that, efficacy wanes dramatically down to 10, 5, 0 percent. For that three-month period, someone who has not been vaccinated is at more risk of catching and spreading COVID-19 than someone who has. At the end of that three-month period, the clock is reset. But she didn't say, yeah, I'll get the vaccine, and then its effectiveness wanes at three months. And at that point, your rationale doesn't work anymore, and I want at that point to be given leave from my job. No, indeed, Your Honor. She was not saying, I want to get injected at all. What she was saying was, I want to work, but taking other precautions such as masking, social distancing, and I do understand that the No, no, no. Your opponent says the alternatives of masking, distancing, and the like are an afterthought that have come up on appeal, basically, that that was not the accommodation request. That may well be, Your Honor. Yes, okay. All right. I can see that. The burden, however, is on the defendant to demonstrate that any and all accommodations are correct. No, no, no, no, no, no, no. I don't think so. I think the law is, here there was a request for a particular accommodation. The hospital said no. You didn't come back and say, okay, can we try these accommodations instead. We might have a different lawsuit if we did. Let me ask you another way. If, assume that at least based on its own experience and the CDC guidance, the hospital had a reason to want to avoid her getting ill, right? They're short on staff. She's working in an intensive care unit. They have a flood of more patients coming in. Do you concede then, without getting into the transmission issue, that that would have been an undue hardship? I don't know, Your Honor. I'm not willing to concede that for this reason. Because I am of the belief that what the record so far shows is that the hospital simply relied on CDC recommendations about the need to vaccinate its workforce. Yes, but partly to protect the health care workers themselves. Okay. So your attack in the end comes back to the same attack on the CDC reliance? It does, Your Honor, yes. I'm a little confused. The district court in its opinion seemed to identify two different things that the CDC could be weighing in on. One is the likelihood of transmission from a health care worker to another person. Yes, Your Honor. And the other is the likelihood of a person getting the disease, which is different than how you transmit it, correct? Yes, Your Honor. Okay. I understood you in your colloquy with Judge Lent to be saying that you agree that the record supports the notion that for some duration of time, CDC guidance suggests that there is a higher likelihood of transmission if you're not vaccinated. I don't know if I conceded that that's what the complaint alleges, Your Honor. I don't have the complaint in front of me. I don't believe that that's a point, that's sort of the opposite point I would have been trying to make in the complaint. But I do concede that the CDC's position was. You concede that there is, if we took judicial notice of it, we could take judicial notice of CDC guidance at the time, saying that there was a higher risk of transmission for an unvaccinated person for some duration of time. You're not disputing that the record shows CDC was saying that? I'm not sure that the record shows that. I don't dispute that. I don't dispute that the CDC's recommendations were or that the CDC's position was that somebody who's been injected with a COVID-19 vaccine has for some period of time a lower likelihood of getting infected and therefore transmitting it to somebody else. If that's true, what's the problem with the employer's position that in light of that, we're not going to allow a person to be working in the cardiac unit during that period of time? Because it makes a mockery of the exemption process, Your Honor. It makes the exemption process nothing more than a sham. What's a sham about it? Because the burden, once an employee has demonstrated a sincerely held religious belief. They say the burden is having somebody working in the cardiac unit who has a higher risk of transmitting the disease. As a hospital, I tend not to want that to happen in my cardiac unit. So it would be a hardship to have to endorse somebody in the unit who would do that. What's wrong with that? What's wrong with it, Your Honor, is that the employer should have inquired into whether it was possible to grant leave for the duration of... I see. Okay. And if we disagreed that that's a requirement imposed on the employer in a circumstance where the employee has asked only for the right to be there during those three months without anything else other than just being there unvaccinated, if we thought that was the law, you then don't have any problem with the notion that the employer acted appropriately. I will absolutely, Your Honor. That's correct. And my position is... So your whole case depends on the idea that it's incumbent on the employer to ferret out, although you've asked for something unreasonable, might there be something that you could have asked for that was reasonable that we should have accommodated? Well, I wouldn't characterize... I know you wouldn't, but I think it does reduce to that point. But, yes, to engage in an interactive process whereby the employer can find out... What's your best case law for suggesting that that's incumbent on the employer and the employer's failure to do that was the problem? ADA, Your Honor. I know it's from the Seventh Circuit. But that is the case that says that the burden is on the employer to not just... The burden is on the employer to establish that any and all accommodations are not reasonable. In that case, is that with respect to a range of accommodations that were requested? Oh, that I don't know, Your Honor. Well, that would seem to be an important thing to know. Did this argument, this version of the argument, just reading the district court's opinion, the district court doesn't engage with this particular argument. And I confess it also didn't seem front and center to me when I was reading your briefs. Was this the argument that you posed to the district court that, yes, it's true that if all we said is... I mean, just imagine playing it out the way I'm hearing you. It sounds like if the employer came back to the employee and said, no, I can't let you be there unvaccinated for three months. How about if we did it while you were just masked and distanced? And the employee said, no, that's not good enough. I want to be there unvaccinated just like everybody else for those three months. I take it you would say then the employer should win, right? Right. So the only flaw was its failure to follow up and ferret out whether that might have been possible. But I just don't see that as being the terms of the debate in the district court. Maybe I'm missing something. The district court doesn't even seem to address that point. You're not missing something. The way this came up was in the opposition to the motion for summary judgment and in the motion for the motion to strike in which I focused on the question of efficacy... Yeah. ...because of the employer's burden to determine whether, in fact, for this particular employee being accommodated for some period of time would be an undue hardship. So the alternatives... I didn't see in the complaint an allegation of the employer's failure to engage in an interactive process, which I always thought was a separate claim that could be brought, but I didn't see that one was brought. Am I wrong about what's required? I'm not recalling whether I included the claim of failure to engage in the interactive process. I mean, the argument was all about undue hardship. Yes, Your Honor. If there's nothing more... Thank you. ...I'll rest on the papers. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the Boston Medical Center please introduce herself on the record to begin? Good morning, Your Honor. This is Jamie Kessler on behalf of Boston Medical Center. May it please... Speak up a bit more, please. Thank you.  Sorry, Your Honor. So I'm going to dive right into the undue hardship argument because that has been the focus of not only the briefing and the underlying decision, but also the oral argument. Unless I'm missing something. Your opponent seems to be saying that the only flaw is the failure to engage in an interactive process. So that is coming up for the first time on appeal, Your Honor. That was not briefed in the underlying matter. It came up in his opposition or it came up in the brief on appeal here for the first time that there should have been an offer of an alternative accommodation. That was not raised in the underlying matter. The sole defense or argument in the underlying matter to the undue hardship was that the vaccine is not effective and that BMC failed to prove that it was effective and failed to prove that they took steps to confirm it was effective before implementing the vaccine mandate. And I had thought part of the debate was whether the CDC itself had taken the view that the vaccine was effective against transmission. That was not a direct argument, Your Honor. Most of what the argument surrounding the CDC concerned was that BMC relied upon the CDC recommendations in implementing its policy and then denying the request for exemption. Plaintiff takes the position that the reliance upon the CDC was misplaced. And the reason I thought they were taking the idea it was misplaced is because CDC hadn't made clear that the vaccine was effective against transmission, which I thought the district court answered by saying, and then there's a question whether this is a non sequitur or a good answer, it's effective against the disease, which seems different than transmission. I heard your opponent today saying he understands CDC to have taken the view that transmission follows from disease because if you get the disease, you're more likely to transmit. So they're basically one and the same. Yes, Your Honor. I take it that's your position too? It is, Your Honor. And that's how we should read the district court? Correct. Okay. The CDC was recommending obtaining the vaccine to avoid because it reduced or eliminated the risk of being infected with the disease and then transmitting it. And also by having a higher or worse response to it if you caught it. And so based on that recommendation, BMC implemented. The second thing is the response to you would have an impact on the employer in the sense that the individual health care worker who got it then might not be able to work. Yes. But it was less clear to me that that was the focus of the employer's ground for claiming undue hardship than a concern about the health care worker transmitting it to others. No, it was three things. It was concern, and this is in Mr. Hickey's declaration, which is at 110 to 114. One of the reasons is they were concerned about the health care worker themselves getting the infection because that will reduce staffing. It also increases the risk. Can you play that out a bit more? I was frankly surprised that the undue hardship defense didn't say anything more that if the health care worker becomes affected, that affects staffing. There is some reference in a footnote to we were short-staffed. We had more patients than we normally would. We were flooded with COVID patients. We had to put COVID patients in the cardiac intensive care unit as well. Therefore, what is the undue hardship on the employer? The undue hardship, Your Honor, is if the plaintiff was allowed to work unvaccinated, she is more likely to not only catch the virus herself but continue spreading it amongst other staff members and her own patients. And she testified at our deposition, and it is undisputed, that she had daily multiple contacts, not only with patients. You're not answering my question. My question is, assume she gets infected and don't go to transmission, what is the undue hardship of one nurse in the cardiac intensive care unit in the circumstances posing a hardship on the employer? And what makes it a substantial hardship? Yes, Your Honor. So the one nurse being infected and having to be out of work may not rise to the level alone of a substantial undue hardship. Oh, okay. So your defense depends on transmission. It's also the total circumstances, Your Honor. If multiple nurses were granted the requested accommodations and there were over, I believe, 138. Well, remember, the accommodation she wants is three months. It's not just being out sick. Well, that wasn't the requested accommodation, Your Honor. The requested accommodation was to never be vaccinated. There was never raised in her request for an exemption or in the back-and-forth e-mails. How many religious exemptions were requested at the time? There were 138 made. And that was true. How are we supposed to think about undue hardship with respect to the staffing issue? Do you aggregate? In other words, is the employer allowed to? Do you see what I'm saying? I think the employer is allowed to take it. So, in other words, if it turned out there was only one person requesting a religious exemption because it just happened the other people that they had hired didn't want religious exemptions, then you would have to grant it. But if you happen to be in a workplace where there's 40 other people who also want the exemption, then the employer can deny it to everybody. I don't think you have to grant it, even if it's just an individual person, Your Honor. I thought you said to Judge Lynch that you didn't think it was clear that that would rise to the level of being an undue hardship. Because we still have to go back to the potential for transmission. I don't want to talk about transmission. I just want to understand first what the theory is with respect to independent of transmission. Well, with respect to this case, what happened was there were 138 requests. So what's on the record before you is... What I'm trying to understand is if you're the first one of those 138 you lose, you're the second one. Do you see what I'm saying? The employer loses. How would this work? Like if you are supposed to be able to look at other exemption requests in determining the undue hardship as the employer. I mean, I understand maybe we don't need to worry about it because there's still the transmission issue. And as best I can tell, your opponent's not contesting that there was evidence of transmission being an increased risk for at least some duration of time. Yes, Your Honor. And that's the record before you. But as to your question on the... It wasn't... These requests didn't trickle in. They came in very quickly and all at once. And they were being considered individually but also looking at the whole picture. I guess I'm going to ask, is there a case law for the undue hardship question about the sort of what I'll call the aggregation issue and whether the employer is allowed to base its undue hardship assessment on a prediction or contention about if I grant one, then I'd have to grant them all. So I believe the only case that comes close to that, Your Honor, is the Adams case, which was a district court case in which Judge Saylor denied on a motion to dismiss the issue. And part of it, or I believe it might have been summary judgment, but part of the issue was that in that case, Mass. General Brigham had allowed or permitted, I think, almost over 200 accommodations and then began denying them because it reached a point where it was too many. And he said that's too late? The judge essentially said it's a question of fact at what point you reach that tipping point. Here we don't have that situation because BMC denied all of the requests for accommodation, and finding having anyone unvaccinated working, particularly with patient facing, was an undue hardship. But how do you know it was at the tipping point as to any one of them? Well, I don't think we have to reach the tipping point argument. Well, your earlier argument were shorthanded. Everyone is working harder than they should be. We have more and more patients coming in all the time. Where are we going to find staff? I mean, that goes even to one accommodation. So I guess you made my argument for me, Your Honor, but that is ‑‑ I thought your argument was we weren't sure about one accommodation. Yeah, you seem to have given it away. I understand why you said that. In a vacuum, Your Honor, I'm not sure if one requested accommodation would create a substantial undue burden under the Groff standard. But that's not what we had here. And particularly in this context with a hospital, with a frontline registered nurse, with the understaffing that they were experiencing, it could potentially be burdened. I mean, in the context of the case law about whether a medical exemption alone triggers strict scrutiny when it's not accompanied by a religious exemption, there is case law that suggests one ground for saying, well, the medical exemption alone may be justified if you thought there are going to be fewer than religious exemptions. And that's a justification for having a small exemption rather than one that would be open for the floodgates. So I don't know how that same logic maybe is applicable in the undue hardship context. I just think what I'm struggling to figure out is whether that's the right way to think about it. So we don't have a medical exemption request here. Yes, we're never sure about one. But an employer always is worried if I grant one, I'd have to grant them all. So one is always more than one. So it's always an undue hardship to be faced with an exemption of this kind, because staffing, then it would be every person could be out. Maybe that's how we're supposed to do the analysis. It's just not clear to me. I think that's an acceptable way to do the analysis, but I also don't think you have to do that analysis here because we're not going to. Because of the context and the facts and the record of this case. And the nature of the argument that was presented to the district court. Okay. Correct. Thank you. Your Honor, I'm not sure. Your Honors, I'm not sure if you want me to go into any of the arguments. I can rest on the brief. You best not question the sincerity of her religious belief. No, Your Honor. There's no need to go into that here. So ultimately, Your Honor, it boils down to BMC put forth sufficient evidence to demonstrate an undue hardship, and plaintiff has not put any evidence to create a question of fact about those issues. And the only argument before the district court. I take it if their challenge to the basis for thinking there would be a transmission concern, if we were not to accept that aspect of the challenge as having merit, there's no contention that if there would be the kind of increased transmission you're claiming, there's no argument that that is not undue hardship. No, and I don't believe plaintiff in the underlying matter made any argument or even disputed that. The dispute was solely it's not effective. Thank you. Thank you, Your Honors. Thank you, counsel. That concludes argument in this case.